(120 App. Div. 709)

YUENGLING v. BETZ.

(Supreme Court, Appellate Division, First Department. July 15, 1907.)

ACCOUNT—RIGHT TO ACCOUNTING.

Plaintiff owned bonds of a corporation, secured by a mortgage on its real and personal estate, subject to a prior mortgage. Defendant offered to assist plaintiff's husband in securing control of the mortgage bonds of the same series as those belonging to plaintiff, and to that end agreed to purchase sufficient of the bonds to control the foreclosure thereof, and to turn them over to plaintiff's husband at any time on payment of the cost

of acquisition and interest. Before proceeding under the agreement defendant required plaintiff to deliver her bonds to him; he agreeing to protect her interests. On foreclosure of the first mortgage defendant became the purchaser, but his possession of plaintiff's bonds was not used in making the purchase and had no relation thereto. At a receiver's sale of the personal property covered by the mortgage securing plaintiff's bonds defendant also became the purchaser. *Held* that, after the foreclosure of the first mortgage, plaintiff's only claim was to recover the value of the bonds on defendant's refusal to redeliver them, or to compel defendant to account for the personal property purchased at the receiver's sale.·

Clarke and Lambert, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Catherine M. Yuengling against John F. Betz. From the judgment of the Special Term (77 N. Y. Supp. 554), defendant appeals. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, HOUGHTON, and LAMBERT, JJ.

Abram I. Elkus, for appellant.
Frederic R. Kellogg, for respondent.

INGRAHAM, J. This action was to compel the defendant to account for his acts and proceedings in connection with certain bonds of the D. G. Yuengling Brewing Company which had been delivered to him by the plaintiff. The complaint alleges that in the year 1895 the defendant was the owner of a large majority of the bonds included in the series to which the bonds owned by the plaintiff belonged; that these bonds were secured by a mortgage upon the real estate and personal property of the corporation, which mortgage was subject to a prior mortgage for $310,000; that default had been made in the payment of interest on these bonds, and that the said defendant "represented and promised the said plaintiff that if she would deliver to him her said bonds, with power to use the same as above stated as he might see fit, he would hold the same for her and in trust for her benefit and protection, and would protect her interest connected therewith"; that upon that request the plaintiff delivered all of said bonds to the defendant, relying upon the said representations and promises and at the request of the said defendant; and that the said delivery was accepted by said defendant upon the said terms. Subsequently the defendant caused such proceedings to be taken as resulted finally in the sale of all the property of said corporation, whether covered by the said mortgage or otherwise, and acquired the legal title to all of said property, and that in payment of a part of the purchase price of said property the defendant used and turned in and surrendered all of the said bonds thus deposited with him by the said plaintiff, together with such bonds as belonged to him individually; that the property rights and legal title which were thus acquired by the defendant are of great value; that the plaintiff is not able to state the value of her portion of said property, and demanded judgment for an accounting. The defendant admits that he received these bonds from the plaintiff, but denies that he received them in trust, or upon any representation or promise in relation thereto, and alleges that these bonds were sold and transferred to him for a valuable consideration.

The action was tried at Special Term. The court found that the title and ownership of the $71,800 of bonds deposited by plaintiff with the defendant were not transferred by the plaintiff to the said defendant, and that, the defendant having acquired the property of the brewing company in part by using as his own the said $71,800 par value second mortgage bonds of the property, the plaintiff was entitled to share with the defendant in the property of the said company thus acquired by him, and was therefore entitled to recover from the defendant that proportion thereof which $71,800 bears to the par value of the entire number of second mortgage bonds owned, held, or controlled by the defendant on said date, with interest on such proportionate share from said date, and directed an interlocutory judgment referring it to a referee to ascertain and report the value of the property which was acquired by the defendant on that day. The interlocutory judgment was entered in accordance with this decision, whereupon the accounting was had before a referee, who reported that the actual gross value of the property acquired by the defendant was $1,012,172.05, subject to a mortgage of $335,184.82, and that the net value of the property of the brewing company acquired by the defendant on the 27th of May, 1897, was $676,987.23, and awarded judgment against the defendant for the proportion of the amount of plaintiff's bonds to the whole amount of the bonds outstanding. Upon that report the final judgment was entered, from which the defendant appeals, bringing up for review the interlocutory judgment directing the accounting.

This decision was filed under the provision of section 1022 of the Code of Civil Procedure, before the amendment of that section by chapter 85, p. 237, Laws of 1903, which allowed what is called a "short decision." The cause of action sought to be enforced was based upon the allegation of the trust relation between the plaintiff and defendant, by which these bonds were deposited with the defendant in trust; for it is quite clear that if no such trust relation existed this action in equity for an accounting could not be maintained. If the relation was other than that of trustee and cestui que trust, then the plaintiff's cause of action was against the defendant to recover the value of her bonds, and she was not entitled to an accounting for the value of the property acquired by the use of them. In the decision filed by the learned trial judge there was no finding of any trust relation. The finding was that the bonds theretofore deposited by the plaintiff with the defendant were not transferred by the plaintiff to the defendant. The bonds in question were coupon bonds, transferable by delivery. They belonged to the plaintiff, and were delivered by her to the defendant. It appeared by the evidence, as stated in the opinion of the court below, that the defendant entered into an agreement with plaintiff's husband whereby the defendant agreed to purchase sufficient of these mortgage bonds to control the foreclosure thereof, which the defendant was to carry for a number of years and turn over to the plaintiff's husband at any time upon payment of the cost of acquisition and interest; that the defendant, in addition to agreeing to purchase the bonds, insisted that the plaintiff should hand over to him all the bonds she owned; that there was no agreement between the plaintiff and de-

fendant respecting the terms upon which the bonds were to be held by the defendant, and there was no evidence that plaintiff either sold or gave her bonds to the defendant; that she was reluctant to part with them, and only did so after the defendant had repeatedly sent peremptory messages insisting that they be handed over to him; and that the court was convinced that in delivering her bonds to the defendant the plaintiff understood that she was merely depositing them with him in order to strengthen his position, but without any intention of transferring the title thereto to him. From these facts the court concludes that in holding her bonds and dealing with them the defendant bore to the plaintiff a fiduciary relation, and that she undoubtedly retained the right to the bonds or their value; that if the sale of the property had not intervened the plaintiff might have obtained full relief in an action at law; that this, however, was impossible under the existing conditions, and the conditions which rendered it impossible were of the defendant's own creating.

The plaintiff's husband was called as a witness, and testified that he was the owner of a majority of the capital stock of the D. G. Yuengling Brewing Company; that there was a first mortgage of $310,000 on the real property of the corporation, and a second mortgage of about $900,000 on its real and personal property in the city of New York; that the interest on the second mortgage bonds due on the 1st of January, 1894, had not been paid, and the first mortgage was about to be foreclosed, whereupon the plaintiff and the defendant entered into an agreement, dated the 7th of June, 1894, which recited the foregoing facts, and, further, that the party of the first part (defendant) was the uncle of the party of the second part (said David G. Yuengling, Jr.), and was desirous of assisting the latter to acquire the entire issue of the second mortgage bonds, or such part thereof as could be purchased at a price not exceeding 50 per cent. of the par value thereof, provided the party of the first part could be secured for the money advanced by him in making such purchase, and could be assured of interest on all advances made by him for the purpose of such purchase at the rate of 6 per cent. per annum; whereas the party of the second part was willing to give such guaranty, and to personally perform all the labor connected with the negotiation and purchase of said bonds, and to permit the party of the first part to hold the bonds that might be so purchased as security for the advances to be made by him and the interest thereon, and as further security for an indebtedness, amounting to $35,000 or thereabouts, then owing by the party of the second part to the party of the first part. The defendant then authorized David G. Yuengling, Jr., and the trustee of the mortgage, to negotiate, contract for, and purchase for the defendant the outstanding second mortgage bonds of the D. G. Yuengling Brewing Company at a price not exceeding 50 per cent. of the par value; that the defendant should pay for the bonds so purchased, which should be delivered to the defendant, and he should continue to hold the same under the terms of the agreement, subject to the right of David G. Yuengling, Jr., at any time before the maturity of the bonds, to demand and receive an absolute transfer thereof, and of all the unpaid interest coupons thereon, and to acquire the title to such bonds upon payment

to the defendant of the amount advanced by him for the purchase of said bonds, with the interest thereon, together with the sum of $35,000 then owing to the defendant. David G. Yuengling, Jr., testified that after this agreement had been signed the defendant told him that he wanted the plaintiff's bonds, told the witness to tell the plaintiff that the defendant wanted the bonds to place with his, so in case anything came up he could vote on them; that he would hold them in trust for her and would take care of her interest. The witness further said that he communicated this message to the plaintiff, who objected to letting the defendant have the bonds. He then testified that he told the defendant that she (plaintiff) objected, because she could hold the bonds the same as he could, and could vote with him in any manner that he wanted her to; that subsequently the defendant again told the witness to say to the plaintiff that he would like to have these bonds to place with his in case anything should turn up; that the witness gave this message to the plaintiff, but that the plaintiff still refused to give the bonds; that about two weeks after this the defendant again told the witness that if the plaintiff did not trust him with the bonds the defendant did not feel like going on and doing anything more, because he was doing everything for the witness in the matter, and he then said: "You tell Kate for me that I want these bonds to hold with mine, and that I would hold the bonds in trust for her and her children, and would look out for her interest"; that he would like to have these bonds; that "there might something happen to Kate or myself," and that he wanted to have them in case he wanted to vote on them; that at other times he said that the plaintiff was to be taken care of, and he would see that she got her money. It further appeared that pursuant to this agreement the defendant had advanced over $277,000 in the purchase of these bonds, which includes the $71,800 of the plaintiff's bonds, and had also advanced to the company at David G. Yuengling, Jr.'s, request about $107,000, and in addition to that a firm of which the defendant was a member held promissory notes of the company amounting to over $73,000. Subsequently, on May 22, 1896, at an interview between Mr. Samuel Untermyer, the defendant, and the witness a letter was dictated by Mr. Untermyer which was to contain the agreement between the company. The witness stated that the defendant agreed to it, and he stated that he also agreed to the letter. In that letter it was stated that the defendant was the holder of $752,-500, or thereabouts, of these bonds; that "this includes $71,800 of bonds belonging to Mrs. Yuengling," and also over 2,100 shares of the capital stock of the company; and this letter then contains this statement:

"These bonds and shares of stock are held by you as collateral for loans aggregating $277,000.36, paid or secured to be paid by you on the purchase of the bonds and stock and for $107,000 advanced to the company at Mr. Yuengling's request."

Here is a direct statement, in a letter which was to be signed by David G. Yuengling, Jr., and sent to the plaintiff, that Mrs. Yuengling's bonds were held by the defendant as collateral security for the money that he had advanced for the purchase of the bonds and stock, and also for the advances made at Yuengling's request to the company

of which he was president and principal owner, which in form expressly contradicts the testimony that he has given that the agreement under which the bonds were deposited by him with the plaintiff was that he would hold them in trust for the plaintiff. The plaintiff testified that she owned these bonds; that her husband came to her, and told her that the defendant wanted her bonds to vote upon in case there was any trouble in the foreclosure; that the plaintiff refused to deliver them, and subsequently her husband stated again to her that the defendant wanted the bonds for the same purpose—to vote on, if necessary; that on the third conversation her husband said to her: "Uncle Fred feels very badly that you don't want to trust him; that he wants to hold those bonds for you in trust, and he will take care of you and your children"; that subsequent to this last conversation she wrote the letter of August 12, 1894, which, after thanking the defendant for the arrangement, said: "My bonds are in the safe deposit vault. On my return to the city will hand them to you personally." And apparently in reply to that letter there was a letter from the defendant to the plaintiff, which was dated June 11, 1895, in which the defendant said:

"I have your letter of August 12/94 before me, in which you say: 'My bonds are in the safe deposit vault. On my return to the city will hand them to you personally.' I will be over on Thursday, and would like to get them to put with the bonds I have acquired."

On July 1, 1895, the plaintiff sent the bonds to the defendant by a Mr. Whittemore. With the bonds there was sent a receipt for the defendant to sign, which was:

"Received from Mrs. Catherine M. Yuengling seventy-one thousand and eight hundred dollars ($71,800) of bonds of the D. G. Yuengling Brewing Company, deposited with me and which I am to hold in trust for her."

That receipt the defendant refused to sign, but signed and returned a receipt as follows:

"Received from Mr. Whittemore bonds of D. G. Yuengling Brewing Company to amount of seventy-one thousand eight hundred ($71,800) dollars, which Mrs. Cath M. Yuengling intrusted to him to deliver to me."

And, although the plaintiff received this receipt, she never objected to its form and never demanded back the bonds. The evidence is uncontradicted that David G. Yuengling, Jr., was constantly calling on the defendant for assistance, and finally the defendant said that he would not furnish further assistance until the plaintiff's bonds were deposited with him. It further appeared that in 1897 an action was pending by the Mutual Life Insurance Company for the foreclosure of the mortgage for $310,000. That proceeding resulted in a sale on May 22, 1897, when the real property covered by that mortgage was purchased by defendant and John F. Betz for the sum of $339,000, and he thereafter received in due course a deed of the property. Subsequently, on or about July 16, 1897, at a receiver's sale of the assets of the company not covered by the Mutual Life Insurance Company mortgage, the defendant became the purchaser of the remaining assets of the company for the sum of $75,000. After the defendant purchased the property at this sale under the foreclosure of the first mortgage, he borrowed from the Mutual Life Insurance Company

the sum of $325,000 and gave them a mortgage covering the same property.

Assuming that there was a fiduciary relation under which the defendant received the plaintiff's bonds and became obligated to protect the plaintiff in the use of the bonds, the possession by the defendant of the plaintiff's bonds had no relation to the foreclosure suit, under which the defendant acquired the real property under the sale in the action to foreclose the Mutual Life Insurance Company mortgage. That mortgage was a prior lien to that of the plaintiff's bonds. The mortgage was foreclosed by the Mutual Life Insurance Company, and at the sale under that foreclosure the defendant purchased the property in and paid the amount at which the property was sold. His possession of the plaintiff's bonds was not used to acquire title to that real property and had no relation to its purchase. Assuming that he was to hold the bonds in trust for the plaintiff, he was under no obligation to pay the prior mortgage upon the property, and under no obligation, express or implied, to purchase the property on her account. The defendant did not purchase the real property as trustee for the plaintiff, nor did he use the plaintiff's bonds on that purchase. It would appear that the amount that defendant paid for the real property was about the amount that was due to the holder of the first mortgage. There can be no claim that the plaintiff was entitled to any interest in the purchase of the real property, or that the defendant was bound to hold the real property purchased at the foreclosure sale in trust for the plaintiff. Assuming that the defendant held the plaintiff's bonds in trust for the plaintiff, the plaintiff would not be entitled to an accounting for anything, except in relation to the personal property that was bid in by the defendant at the receiver's sale, which was covered by the mortgage to secure the plaintiff's bonds. After the sale in the action to foreclose the Mutual Life Insurance Company's mortgage the plaintiff's bonds were no longer a lien on the real property, which was sold under the first mortgage, and the only claim that plaintiff could have was to recover the value of the bonds or to compel the defendant to account for the personal property, that he purchased at the receiver's sale, upon which the plaintiff's bonds were a lien.

I think, therefore, that both the interlocutory and final judgments must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON, P. J., and HOUGHTON, J., concur. CLARKE and LAMBERT, JJ., dissent.